UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
JOHN PARISI,                                    :
                                                          :            MEMORANDUM AND ORDER
                            Plaintiff,          :
                                                          :            04-CV-2187 (ENV) (ETB)
                -against-                        :
                                                          :
(1) SUFFOLK COUNTY,                             :
(2) SUFFOLK COUNTY D.A. OFFICE,                 :
(3) SUFFOLK COUNTY P.D.,                        :
(4) JAMES POWER, DETECTIVE #836,                :
(5) P.O. COZINE,                                :
(6) JUDITH WALSH, A.D.A.,                        :
(7) KIM MANNINO,                                :
(8) BRENDA RUSSO,                               :
                                                          :
                            Defendants.         :
------------------------------------------------------------------ x
VITALIANO, D.J.

    Plaintiff John Parisi brings this civil rights action pursuant to 42 U.S.C. §§ 1983

and 1985, alleging that defendants violated his rights under the Fourth and Fourteenth

Amendments by subjecting him to false arrest and malicious prosecution. Specifically, on April

27, 2001, the Suffolk County police arrested plaintiff on suspicion of the crime of rape, and he

was subsequently prosecuted for the crimes of rape in the first degree, sodomy in the first degree,

burglary in the first degree, kidnapping in the second degree, and robbery in the third degree. On

June 6, 2002, a jury acquitted him of all charges, and he now alleges that defendants arrested and

prosecuted him with malice and without probable cause. Parisi argues that defendants --

motivated largely by personal animus and bias -- conspired to fabricate the story about the

alleged criminal activity, which was advanced by subsequent failings in the police investigation.

    Defendants Detective James Power,[1] Police Officer Robert Cozine, and the

---

[1]    The case caption has been amended to reflect the correct spelling of Detective Power's name.

1

County of Suffolk (collectively, the "county defendants") have now moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure.[2] For the reasons set forth below, the Court concludes that plaintiff's claims fail as a matter of law and, accordingly, grants summary judgment in favor of the county defendants.

## Background

The relevant facts are drawn from the complaint and the submissions of the parties on the motion for summary judgment, and are reviewed in the light most favorable to plaintiff. See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc., 473 F.3d 450, 456 (2d Cir. 2007) ("In assessing the record . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.") (quoting Stern v. Trs. of Columbia Univ., 131 F.3d 305, 312 (2d Cir. 1997)). Any relevant disputes as to fact are noted.

1. The Sexual Encounter Between Parisi and Russo

This action arises out of the aftermath of a 9-1-1 call placed at 11:06 p.m. on April 26, 2001 by Kim Mannino, claiming that her cousin, Brenda Russo, had been raped earlier that evening. Police officer Larry Tyler received the police radio dispatch and proceeded to Russo's apartment, where he found Russo to be in a state of shock. (Transcript of Record, State of New York v. Parisi, No. 1013-01 (Suffolk County Ct. 2002) ("Trial Tr.") at 81.) Upon being told by Russo that she had been raped in her apartment, Officer Tyler called his dispatcher, requesting detectives and crime scene assistants (Trial Tr. at 98-99); within the hour, Power, Detective James McNevin, and a crime scene technician arrived. (Deposition of James Power

---

[2] Although the current motion for summary judgment was also brought by defendant Assistant District Attorney Judith Walsh, plaintiff subsequently withdrew his claims against Walsh and the Suffolk County District Attorney's Office. (Plaintiff's Opposition to Defendants' Motion For Summary Judgment ("Pl.'s Opp. Br.") at 1 n.1). Those claims are dismissed.

("Power Dep.") at 9; Trial Tr. at 162-63, 344). Power and McNevin observed Russo to be "physically shaken" and "distraught, very upset [and] shaky." (Trial Tr. at 226, 345.)

While still at her apartment, Russo provided Power with a physical description of her alleged assailant (Trial Tr. at 231) and recounted[3] that, at approximately 8:30 P.M., she was accosted in the laundry room of her apartment complex by an unidentified man who had exposed his genitals. (Trial Tr. at 455.) The man then physically assaulted her when she tried to leave, ultimately pinning her down and stating that he wanted to have sex with her. (Id. at 456-58.) When Russo began to scream, the man threatened physical harm to silence her. (Id.) She claims she was led outside to a wooded area adjacent to the apartment building, where she was intimidated into performing oral sex. (Id. at 458-60.) During this act, Russo heard her six year old son calling to her, and told the man who it was. (Id. at 461-62.) The man then led her back to her apartment, she said, passing two strangers along the way. (Id.)

When she got to her apartment, Russo put her son in a bedroom, and the man told her to close the bedroom door. (Id. at 475-76.) After talking about himself for a period of time, the man told Russo to disrobe. (Id. at 475, 479-83.) According to Russo, she had unprotected sex with him out of fear that he would do physical harm to her and her son. (Id.) Afterward, the man cleaned himself off with one of Russo's towels, and then told her that he needed her to drive him to a nearby gas station to purchase beer. (Id. at 495.) Russo retrieved her son and complied with his request for a lift. (Id. at 489-93.) After making his beer purchase at the gas station, the man then allegedly directed Russo to drive him to another location, where he made additional threats to contact her and got out of the car. (Id. at 494-96.) She then returned home, and, some

---

[3] The Court, of course, does not accept Russo's allegations as true, but rather, only the fact that she made such allegations. Plaintiff disputes the substantive content of the initial conversations between Russo and Suffolk police, but concedes that "Detective Power received a version of the events from Ms. Russo." (Plaintiff's Local Rule 56.1 Statement of Disputed Facts, dated August 24, 2007 ("Pl.'s 56.1 Stmt.") at 12.)

time later, spoke with her cousin, who called the Suffolk police. (Id. at 497-98.)

Parisi's account of his encounter with Russo is, of course, completely different. Parisi claims that he was walking home from work when Russo, who was driving by with her son in the car, offered him a ride. (Declaration of John Parisi, dated August 17, 2007 ("Parisi Decl.") at 2.) According to Parisi, Russo then stopped at her apartment complex, picked up her laundry, and took him up to her apartment, where she put her son in another room. (Id.) After the two discussed Russo's separation from her husband, they had consensual sexual intercourse and oral sex, he says. (Id.) Parisi agrees that Russo drove him to a gas station to purchase beer, and then dropped him off close to his home, giving him her phone number. (Id.) Parisi said that he then returned home and (obviously) did not tell his wife about what had happened. (Id. at 3.)

2. Parisi's Arrest and Prosecution

The details of the investigation by the police at Russo's apartment are hotly disputed, and, viewed in the light most favorable to plaintiff, put in issue, if material, whether the county defendants failed to retrieve or examine a number of pieces of evidence and failed to interview potential witnesses. (Pl.'s 56.1 Stmt. at 6-7.) Despite the overall dispute, however, after a thorough review of the record, the Court finds the following facts to be either accepted by both parties or not reasonably disputable:

At 12:30 A.M. and 12:37 A.M. on April 27, 2001, while the Suffolk police were still in Russo's apartment, Parisi twice called Russo, and Power listened in on both of the calls.[4] (Power Dep. at 41-42; Trial Tr. 102-03; Parisi Decl. at 3.) These phone calls were tracked to

---

[4] The county defendants allege that Russo identified the caller's voice as that of the man who had raped her, and that the caller made threatening comments. (Trial Tr. at 236-37; Defendants' Local Rule 56.1 Statement of Undisputed Facts, dated July 24, 2007 ("Defs.' 56.1 Stmt.") at 3.) Plaintiff admits that he made the two phone calls, but claims that the nature of his comments were not intimidating. See Parisi Decl. at 3; Pl.'s 56.1 Stmt. at 14.) As this poses a classic issue of credibility, the Court must, and does, view the evidence in the light most favorable to plaintiff, that is, his comments were not intended to be threatening.

4

plaintiff's residence. (Trial Tr. at 234, 400-04.) Shortly thereafter, McNevin went to the gas station where Russo claimed she was taken, and obtained a surveillance video which showed Parisi entering the mini-mart alone and purchasing two beers. (Id. at 346-347, 351-59.) The police then created a Polaroid photo of the suspect from the videotape. (Id.)

By this point, Cozine had received a personal phone call from his wife informing him that his sister, Brenda Russo, had been raped. (Trial Tr. at 149-50; Deposition of Robert Cozine ("Cozine Dep.") at 13.) Cozine went to his sister's apartment, though he was still on duty at the time. (Id. at 144-46.) At 1:15 A.M., Power, Russo, and Cozine left Russo's apartment and went to the location where Russo claimed that she had dropped off the assailant -- it was just two blocks from Parisi's residence. (Id. at 338-39.) Power, Russo, and Cozine then went to the 7th police precinct, where Russo was presented with a photo array of six individuals that had already been prepared for a separate similar complaint of a sexual assault that was still pending at the time. (Power Dep. at 16-19; Defs.' 56.1 Stmt. Ex. 12.) From this photo line-up, Russo picked out Parisi's image and identified him as her assailant. (Id.)

At approximately 1:45 A.M., Power, Russo, and Cozine arrived at a Sexual Assault Nurse Examiner ("SANE") center located at a nearby hospital, where Russo was given a physical examination and DNA swabs were taken. (Power Dep. at 20-21.) While Russo was in the examination room, Power and Cozine had an opportunity to converse. (Id. at 24; Cozine Dep. at 34-36.) They remained at the hospital until 4:40 A.M., at which point all three returned to the precinct. (Trial Tr. at 147-48.) Russo had not yet provided a written or sworn statement to the police, but the police observed that Russo seemed exhausted, so they permitted her to return home to sleep. (Power Dep. at 22.)

At 8:30 A.M., Detective James Brosco arrested Parisi at his residence and then transported him to the 7th precinct for questioning. (Deposition of James Brosco ("Brosco

Dep.") at 9-12.) By plaintiff's own admission, during his interview, he withheld information from the police that he was with Russo the previous night.[5] (Parisi Decl. at 3.) At 10:40 A.M., Brosco spoke with Parisi's wife, Dorothy Parisi, who told him that she had not seen her husband between the hours of 5:00 A.M. and 11:00 P.M. on the previous day. The statement was preserved by Brosco in his official report.[6] (Defs.' 56.1 Stmt. Ex. 15.)

At 4:45 P.M., several hours after plaintiff was arrested, Russo gave a sworn statement to the police describing the events of the previous evening. (Defs.' 56.1 Stmt. Ex. 16.) On May 2, 2001, police searched Parisi's home pursuant to a search warrant, obtaining a duffle bag and jacket which Russo had described in her sworn statement. (Id. Exs. 17, 18.) That same day, a grand jury indicted Parisi for rape in the first degree, sodomy in the first degree, burglary in the first degree, kidnapping in the second degree, and robbery in the third degree. Although the legitimacy of a DNA analysis that allegedly matched plaintiff's DNA to samples obtained from Russo's SANE examination is disputed, by the time his criminal trial commenced in May 2002, Parisi's defense theory was one of consent, conceding that he had sexual relations with Russo. (Trial Tr. at 13-20.) He was acquitted by a jury on June 6, 2002. (Id. at 897-99.)

---

[5] Plaintiff did not testify at his 2002 criminal trial, but, at his deposition on April 26, 2007, Parisi claimed that after his arrest, Suffolk police questioned him about a stabbing incident the previous night, which confused him. (Deposition of John Parisi ("Parisi Dep.") at 179-80.) Plaintiff's declaration states that he "was also scared that my wife would find out that I had an extramarital affair so I did not tell him what happened between me and Ms. Russo." (Parisi Decl. at 3.) Whatever his motives, Parisi concedes that he was not forthcoming when questioned by police.

[6] Plaintiff objects to the Court's consideration of Mrs. Parisi's statement on hearsay grounds. The statement, however, is being offered only to demonstrate what information was known by Suffolk police shortly after plaintiff's arrest, and not for its truth. As a result, the statement is properly before the Court on the motion. See Sheikh v. City of N.Y., Police Dep't, 2008 WL 5146645, at *1 n.3 (E.D.N.Y. Dec. 5, 2008) ("[T]he police reports contain statements . . . not offered for the truth of the matter asserted but for the purpose of establishing whether there was probable cause to arrest Plaintiff. As they are not offered for the truth of the matter asserted, they do not constitute hearsay as defined in Rule 801(c) of the Federal Rules of Evidence.").

3. Filing The Lawsuit

On May 26, 2004, Parisi, currently a prisoner at the Clinton Correctional Facility in Dannemora, New York, filed this action, seeking compensatory and punitive damages. As best that the Court can discern from his *pro se* complaint, Parisi's claims are rooted in his allegations that there were four distinct but interconnected motives for the defendants to "contrive false charges" against him: (1) Russo sought revenge for his attempt to call off their extramarital affair; (2) Russo exploited her familial relationship with Officer Cozine, and the two worked together to ensure that he was punished; (3) other Suffolk police officers, spurred on by their camaraderie and professional relationship with Cozine, helped in the frame-up; and (4) the police had an additional motive to incarcerate him because he already had a pending charge against him for allegedly assaulting yet another officer. Given these many motives, Parisi theorizes, the police failed to fairly and accurately investigate Russo's claims, colluded to overlook inconsistencies in her story, lacked probable cause, and pursued a grand jury indictment in bad faith. Plaintiff argues that had the county defendants conducted a proper investigation, his innocence would have been obvious.

**Discussion**

1. Standard for Summary Judgment

A motion for summary judgment is granted only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court's responsibility in assessing the merits of a summary judgment motion is thus not to try issues of fact, but rather to "determine whether there *are* issues of fact to be tried." Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995) (quoting Katz v. Goodyear Tire & Rubber Co., 737 F.2d 238, 244 (2d Cir. 1984)).

Accordingly, the moving party bears the burden of demonstrating that there is no genuine issue as to any material fact, see, e.g., Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005), and the Court must resolve all ambiguities in the evidence and draw all permissible factual inferences in favor of the party opposing the motion. See, e.g., Sec. Ins. Co. of Hartford v. Old Dominion Freight Line. Inc., 391 F.3d 77, 83 (2d Cir. 2004); Hetchkop v. Woodlawn at Grassmere, Inc., 116 F.3d 28, 33 (2d Cir. 1997) ("If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper").

If the moving party meets its initial burden of demonstrating the absence of a disputed issue of material fact, the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party may not then rely solely on "conclusory allegations or unsubstantiated speculation" in order to defeat a motion for summary judgment. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the nonmoving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of . . . the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23. If the evidence favoring the nonmoving party is "merely colorable . . . or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).

2. Statute of Limitations

Before turning to its substantive merit, the Court must address the county defendants' argument that plaintiff's § 1983 claim for false arrest is time barred. "The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injuries occurring in the state in which the appropriate federal court sits." Dory v. Ryan, 999 F.2d 679,

8

681 (2d Cir. 1993), modified on other grounds, 25 F.3d 81 (2d Cir. 1994). In New York, it is three years from the date the cause accrues. N.Y. C.P.L.R. § 214(5) (McKinney 2009). "[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest . . . where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process." Wallace v. Kato, 549 U.S. 384, 396 (2007).

Here, it is not contested that the statute of limitations period on this claim began to run on April 27, 2001, the date of Parisi's arrest, which, on its face, would time bar any action to vindicate that claim brought after April 27, 2004. The county defendants argue that since Parisi's complaint was not filed until May 26, 2004, his claim is so precluded. The argument, however, overlooks the unique circumstances surrounding the filing of Parisi's complaint. Although generally courts look to the date of filing for statute of limitations analyses, the rule is different, and more benevolent, for incarcerated *pro se* litigants, as Parisi was at the time. In such circumstances, the relevant date is the date that the complaint was delivered to prison officials. Dory, 999 F.2d at 682; see Walker v. Jastremski, 430 F.3d 560, 562 (2d Cir. 2005) (explaining that the Dory court "extended the so-called 'prison mailbox' rule" of Houston v. Lack, 487 U.S. 266 (1988), to federal civil complaints); Ortiz v. Russo, 171 F.3d 150, 152 (2d Cir. 1999) ("[A] *pro se* prisoner's § 1983 complaint is deemed filed, for statute of limitations purposes, when it is delivered to prison officials."). The complaint in this action was signed by Parisi and notarized on February 13, 2004, well within the applicable statute of limitations. More critically, Parisi declares, without challenge, that he delivered his complaint to prison officials on the same day. Clearly, then, the complaint was filed in a timely manner; the statute of limitations affords the county defendants no grounds for judgment.

3. False Arrest

As to the merits, the county defendants move for summary judgment on Parisi's

9

false arrest claims on the ground that there was probable cause to arrest him, or, alternatively, that the individual officers sued are entitled to qualified immunity because there was arguable probable cause to arrest.

The elements of a false arrest claim under the Fourth Amendment are substantially similar to those of a false arrest claim under New York law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). "In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). To prove the elements of false arrest, Parisi must show that: (1) the defendants intended to confine him; (2) he was conscious of his confinement; (3) he did not consent to be confined; and (4) the confinement was not otherwise privileged. Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994). In this case, the only disputed issue is whether the confinement was constitutionally "privileged" because the police had probable cause. "Under New York law, the existence of probable clause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006); see Weyant, 101 F.3d at 852 (stating that probable cause "constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983") (internal quotation marks and citations omitted). Furthermore, even absent probable cause to arrest, a police officer will be entitled to qualified immunity if he can demonstrate that there was arguable probable cause for the arrest. Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004).

*a) Probable Cause*

Probable cause exists when the arresting officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a

crime." Jaegly, 439 F.3d at 152 (quoting Weyant, 101 F.3d at 852). Whether probable cause exists "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time, and not on the officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (internal quotation marks and citation omitted); see Martinez v. Golding, 499 F. Supp. 2d 561, 567 (S.D.N.Y. 2007) (explaining that "the officer's subjective belief at the time of arrest is irrelevant"). Thus, a court's inquiry must focus solely on the facts available to the officer at the time of arrest. Ricciuti v. New York City Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); Dukes v. City of New York, 879 F. Supp. 335, 340 (S.D.N.Y. 1995). Facts subsequently learned by the officer after the arrest, whether they buttress or belie the existence of probable cause, are irrelevant to the false arrest claim. See Ricciuti, 124 F.3d at 128. An officer may infer probable cause without reaching the level of evidence necessary to support a conviction, but must rely on more than just "rumor, suspicion, or even 'a strong reason to suspect.'" United States v. Fisher, 702 F.2d 372, 375 (2d Cir. 1983) (quoting Henry v. United States, 361 U.S. 98, 101 (1959)).

Substantively, then, the Court need only examine whether the "arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." Jaegly, 439 F.3d at 154. In the present case, that it is unclear what individual charges were identified by Brosco when he arrested Parisi is of no moment, for the Court concludes that the police had ample probable cause to arrest him for the commission of various crimes related to sexual assault.

For example, under New York law, "[a] person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person ... [b]y forcible compulsion." N.Y. Penal Law § 130.35(1). Even viewing the evidence in the light most favorable to plaintiff, as nonmovant, Parisi does not, and cannot, reasonably dispute that the following circumstances

were existent and, indeed, known to arresting officer Brosco at the time he placed Parisi under arrest: (1) Mannino called 9-1-1 stating that Russo had been raped; (2) Russo appeared upset when observed by the police on their arrival; (3) Russo provided Power with an oral statement describing how she was raped; (4) Russo identified Parisi's voice as that of her assailant's when he twice called her apartment following the assault; (5) the two phone calls were traced to Parisi's address; (6) a surveillance video at a nearby gas station corroborated Russo's statement that Parisi purchased beer around the time she claimed; (7) Russo pointed out the location where she claimed she dropped off Parisi, and which was a point two blocks from his residence; and (8) Russo picked out Parisi's image from a photo array of six individuals previously prepared by the police in furtherance of their investigation of a similar sexual assault complaint.

Notwithstanding these uncontroverted circumstances, plaintiff argues that the police lacked probable cause because, he contends, they relied almost exclusively on Russo's first-hand account, which a reasonable police officer would have doubted. Quite to the contrary, "it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (quoting Miloslavsky v. AES Eng'g Soc'y, 808 F. Supp. 351, 355 (S.D.N.Y. 1992)); Donovan v. Briggs, 250 F. Supp. 2d 242, 251-52 (W.D.N.Y. 2003), aff'd, 86 Fed. Appx. 469 (2d Cir. 2004) ("Both New York State and federal courts have held that a purported crime victim's identification of the alleged culprit will generally suffice to create probable cause to arrest."). Yet, it is also true that a police officer does not have *carte blanche* to neglect all investigative duties in relying on a victim statement; the officer can only derive probable cause to effect an arrest from that statement "absent circumstances that raise doubts as to the victim's veracity." Singer, 63 F.3d at 119; Cf. Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996) (noting that "the failure to make a further inquiry when a

12

reasonable person would have done so may be evidence of a lack of probable cause"). Even so, the probable cause standard does not require that the arresting officer affirmatively seek out reasons to doubt the victim or witness where none are apparent. "To … insist upon a collateral investigation into the credibility of the complainants would place an unfair burden on law enforcement officers. It would be unreasonable and impractical to require that each complainant be assessed prior to police action regarding the subject of the complaint." McDermott v. City of New York, 1995 WL 347041, at *4 (E.D.N.Y. May 30, 1995). The Court's inquiry, therefore, is to determine if there is a material fact in issue as to whether the county defendants had reason to doubt the veracity of Russo's story prior to arresting Parisi.

More critically, though, as an initial matter, plaintiff's argument in connection with this inquiry wrongly presumes that Russo's statement was the sole basis for probable cause, ignoring corroborating evidence such as Parisi's two tracked phone calls and the gas station surveillance footage. But, assuming Russo's statement was the sole basis, plaintiff cannot explain why the county defendants should have doubted her veracity. Plaintiff's suggestion that Power's judgment was affected by his knowledge that the putative victim was Officer Cozine's sister (Pl.'s Opp. Br. at 13) is wholly speculative. That Russo was related to a Suffolk police officer is not alone in any way probative of whether she was likely to claim falsely that she had been sexually assaulted. More distressing is plaintiff's totally unsupported argument that the fact Russo did not herself make the 9-1-1 call to police, but instead relied on her cousin to do so, should prompt the police to doubt Russo's credibility as an alleged rape victim. (Id.) In fact, the involvement of a second person in placing the call reporting the crime, if anything, bolstered the veracity of Russo's complaint.[7] Furthermore, plaintiff provides no legal support for his implied

---

[7]    This line of reasoning that the police should have doubted Russo and investigated the veracity of her claim is a prelude to the nub of the opposition -- Parisi's conspiracy claim. The undisputed facts are so compelling of a probable cause finding that the only effective response by plaintiff is to contend

13

argument that the failure of the police to require and rely on a sworn, written statement from the victim eviscerates probable cause. (Id. at 14). To be sure, the opposite is true -- probable cause for arrest has often been found by courts where only oral statements and descriptions were provided by the alleged victim. See, e.g., Curley v. Vill. of Suffern, 268 F.3d 65 (2d Cir. 2001) (victim approaches police officer after alleged assault); Smith v. City of New York, 388 F. Supp. 2d 179 (S.D.N.Y. 2005) (hospitalized rape victim describes the incident to police officer); Miloslavsky, 808 F. Supp. 351 at 355 (victim's phone and face-to-face report to police).

Simply put, absent a police conspiracy against Parisi, see Part 5, infra, there is no record evidence to support a finding that there was reason for Suffolk police to doubt Russo's rape claim. The situation here is readily distinguishable from Jovanovic v. City of New York, 2006 WL 2411541 (S.D.N.Y. Aug. 17, 2006), which is cited by plaintiff for the proposition that a law enforcement officer may have reason to doubt a purported victim's story. In that case, the alleged victim told police that she was hogtied for 20 hours, violently raped with a club, severely burned with candle wax, and repeatedly gagged, though a simple physical examination revealed no physical injuries. Id. at *2. Additionally, the complainant there had a significant history of making false accusations, gave contradictory accounts of the incident to the police, and waited four days before seeking medical treatment despite her claims that she experienced "profuse bleeding, severe burns, and intense pain." Id. Despite all of these red flags, the police arrested the plaintiff on little basis other than the complainant's statement. No such red flags are

---

that, at minimum, a triable issue exists as to whether the entire criminal complaint against him was a sham, i.e., that the sex between Parisi and Russo was consensual and that, prior to the arrest, Russo and others, including at minimum some of the county defendants, conspired to frame Parisi for a crime that never happened. For reasons sketched out below, see Part 5, infra, the Court determines that there was no such conspiracy and, viewing the evidence in the light most favorable to plaintiff, there is not even a material fact in issue about the existence of such a conspiracy. If there was a material fact in dispute about the existence of a conspiracy, there would then most certainly be a triable issue as to whether the arrest of Parisi was made on probable cause or simply as an act in furtherance of the conspiracy.

identified by plaintiff here. Viewing the record most favorably to Parisi, Russo's account and actions cannot be equated with the perfect storm of circumstances that precluded a probable cause finding in Jovanovic.

Parisi, lastly, returns to the foxhole that probable cause was wanting because "there were abundant sources of exculpatory evidence, i.e., demonstrating that the relationship was consensual, that the county defendants simply ignored. (Pl.'s Opp. Br. at 15.) Even assuming the existence of such evidence, the argument ignores the rule that "once a police officer has reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Curley, 268 F.3d at 70; see Panetta v. Crowley, 460 F.3d 388, 396 (2d Cir. 2006) ("[The officer's] function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of evidence."). Police officers may have probable cause "even if the total sum of evidence ... might not persuade a jury to convict" for the crime later charged. Finigan v. Marshall, 574 F.3d 57, 63 (2d Cir. 2009). Since there was an abundance of evidence from which to derive probable cause, the county defendants need not have done more to justify the arrest.

At the heart of it, plaintiff has not created a genuine issue of material fact with respect to any of the facts and circumstances the Court concludes are necessary to support a finding of probable cause.[8] Brewton v. City of New York, 550 F. Supp. 2d 355, 364-65 (E.D.N.Y. 2008) ("When conducting a probable cause inquiry, the court's duty is to look at the

---

[8] This is not to suggest that Parisi has not reasonably disputed any of the facts the county defendants contend support a finding of probable cause. Clearly, certain facts are in dispute, including (1) comments Officer Tyler may have made to other officers regarding the legitimacy of Russo's story; (2) Detective Power supposedly noting that Russo's oral statement specifically described Parisi prior to the tracking of the his phone calls; and (3) whether Parisi made threatening comments to Russo during his two phone calls to her apartment. However, none of these fact disputes mandates the denial of summary judgment because none of them either alone or collectively upsets the finding that the other facts and circumstances recited by the Court, which are neither disputed nor susceptible to reasonable dispute, amply support the conclusion that the county defendants had probable cause to arrest Parisi.

15

'totality of the circumstances'"); McZorn v. Endicott Police Dep't, 2008 WL 163581, at *7 (N.D.N.Y. Jan. 16, 2008) ("Even where factual disputes exist, a § 1983 claim may fail if the plaintiff's version of events is sufficient to establish probable cause to arrest." (citing Mistretta v. Prokesch, 5 F. Supp.2d 128, 133 (E.D.N.Y. 1998)). Accordingly, the record demonstrates a multitude of facts beyond reasonable contest that, taken together, undoubtedly rise to establish that probable cause existed to arrest Parisi.

### b) Qualified Immunity

Supposing the Court did not find as a matter of law that there was probable cause for the arrest of Parisi, the county defendants would still avoid liability under the doctrine of qualified immunity. Qualified immunity protects a police officer from liability for damages if he can demonstrate that there was "arguable probable cause" for the arrest. Id. at 61. Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) "officers of reasonable competence could disagree on whether the probable cause test was met." Id. (quoting Escalera, 361 F.3d at 743). As with probable cause, the Court inquires into facts known to the arresting officers at the time of arrest. See Cornett v. Brown, 2007 WL 2743485, at *8 (E.D.N.Y. Sept. 17, 2007), aff'd, Cornett v. Jamison, 326 Fed. Appx. 624 (2d Cir. 2009). For the same reasons discussed above, there can be no doubt that, at a minimum, officers of reasonable competence could disagree on whether there was probable cause to arrest Parisi on the simple accusation of the claimed victim alone, much less when supported by corroborating evidence, e.g., the surveillance video. See Granito v. Tiska, 120 Fed. Appx. 847, 849 (2d Cir. 2005) (police officer had arguable probable cause to arrest alleged trespasser by relying on statement of property owner); Donovan v. Briggs, 250 F. Supp. 2d 242, 256 (W.D.N.Y. 2003) (putative rape victim's statement, demeanor, and corroborating physical evidence sufficient to confer qualified immunity on defendant police officers); cf. Cotz v.

Mastroeni, 476 F. Supp. 2d 332, 367 n.41 (S.D.N.Y. 2007) (police officer who relied on "information provided by two eye-witnesses" had arguable probable cause to arrest).

In light of the foregoing, the Court grants summary judgment in favor of the county defendants on plaintiff's false arrest claims.

### 4. Malicious Prosecution

The branch of the motion directed at plaintiff's malicious prosecution claims is rooted in the same soil -- that there was probable cause to prosecute Parisi.

Claims for malicious prosecution are similar under New York law and Fourth Amendment jurisprudence. Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003). The elements of a malicious prosecution claim are: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the proceeding terminated in favor of the plaintiff; (3) lack of probable cause for commencing or continuing the prosecution; and (4) the defendant acted with malice. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004); Cook v. Sheldon, 41 F.3d 73, 79 (2d Cir.1994). Therefore, as with a false arrest claim, the existence of probable cause entitles the defendants to summary judgment on a malicious prosecution claim. See Broughton v. State of New York, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 94, 335 N.E.2d 310, 314 (1975); Golding, 499 F. Supp. 2d at 569 ("[I]t is equally well established that a finding of probable cause defeats a claim for malicious prosecution"). "In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." Breitbard v. Mitchell, 390 F. Supp. 2d 237, 246 (E.D.N.Y. 2005) (quoting Rounseville v. Zahl, 13 F.3d 625, 629 (2d Cir. 1994)).

*a) Effect of the Grand Jury Indictment*

Parisi's indictment by the grand jury creates a "presumption that his prosecution

was supported by probable cause." <u>Ambrose v. City of New York</u>, 623 F. Supp. 2d 454, 476

(S.D.N.Y. 2009). This presumption can only be overcome with evidence that "the indictment

was secured by fraud, perjury, the suppression of evidence or other bad faith police conduct."

<u>Boyd</u>, 336 F.3d at 77. The simple act of not disclosing to the grand jury all evidence that could

potentially benefit the accused at a grand jury hearing does not necessarily rise to the level of bad

faith. "In short, the police and prosecutors cannot be said to have improperly concealed evidence

every time the plaintiff is able to show that they could have done more or could have disclosed

more. What is required is proof that the police conduct deviated egregiously from statutory

requirements or accepted practices applicable in criminal cases." <u>Zahrey v. City of New York</u>,

2009 U.S. Dist. LEXIS 8177, at *68 (S.D.N.Y. Jan. 8, 2009) (<u>quoting</u> <u>Gisondi</u>, 72 N.Y.2d at 285,

532 N.Y.S.2d at 237, 526 N.E.2d at 160).

 Plaintiff's allegations of bad faith by the county defendants leading up to and at

the grand jury proceedings do not rise above conclusory allegations about the alleged bias of

Cozine and Power. (Pl.'s Opp. Br. at 9-10.) Without any admissible proof other than that Power

knew that Russo's brother was a fellow police officer and that other detectives were present

when Parisi was involved in a physical altercation with an officer, a reasonable juror could not

infer that the county defendants' grand jury testimony was perjured, that evidence was

suppressed, or that the indictment was procured in bad faith or through fraudulent means.

 Cases relied upon by plaintiff are readily distinguishable. In <u>McClellan v. Smith</u>,

439 F.3d 137 (2d Cir. 2006), the plaintiff was indicted by a grand jury for assault charges

relating to a physical altercation with a police officer. The court determined that the grand jury

indictment could have been secured by bad faith and personal animus because the grand jury

testimony was provided by the police officer himself, and because the police officer had

provided three different "variations" of his story of the incident. <u>Id.</u> at 146. In addition, the

plaintiff offered other evidence of bad faith beyond merely the "gross disparities" in the officer's variations, such as the fact that the officer supervised the investigation and was "admittedly … displeased with the original grand jury result." Id. In Boyd, 336 F.3d 72, the central factual dispute was whether the plaintiff's incriminating statement that gave rise to probable cause was made after his arrest, because he was never issued a *Miranda* warning. Significant inconsistencies in the officers' testimony and varied accounts of the arrest created a possible inference of "bad faith or perjury," though the court acknowledged that this "conclusion does not issue easily from these extraordinary facts." Id. at 77.

    *b) "Dissipation" of Probable Cause*

        Setting aside for the moment the grand jury's indictment, in light of the Court's conclusion that the county defendants had probable cause for arrest, Parisi's battle to establish a material factual dispute with respect to probable cause for prosecution is steeply uphill. "In the absence of some indication that the authorities became aware of exculpatory evidence between the time of the arrest and the subsequent prosecution that would undermine the probable cause which supported the arrest, no claim for malicious prosecution may lie." Williams v. City of New York, 2003 WL 22434151, at *6 (S.D.N.Y. Oct. 23, 2003), aff'd, 120 Fed. Appx. 388 (2d Cir. 2005). Probable cause at the time of arrest continues to exist throughout a prosecution unless it is undermined by "the discovery of some intervening fact." Johnson v. Constantellis, 221 Fed. Appx. 48, 50 (2d Cir. 2007). The Second Circuit has indicated that intervening facts will only dissipate probable cause if they expose "the groundless nature of the charge." Kinzer v. Jackson, 316 F.3d 139, 144 (2d Cir. 2003) (quoting Lowth, 82 F.3d at 571).

        Parisi sets forth only two specific examples of information actually learned by the county defendants after his arrest which he claims dissipate probable cause. First, plaintiff claims that the gas station surveillance video showed that he had no concern that Russo would

take the opportunity to flee when he got out of the car to make his purchase. (Pl.'s Opp. Br. at 8.) Second, he notes that Russo's sworn statement was inconsistent with her other statements insofar as it claimed that Parisi dragged her into the woods for oral sex.[9] (Id.)

Accepting Parisi's version of these two facts as true, it is too great an inferential leap to establish the existence of a material disputed fact that the prosecution was groundless. Neither a criminal defendant's calm appearance on a surveillance video post-alleged crime nor the existence of some inconsistencies in statements of the victim dissipate probable cause.[10] They are the makings of everyday criminal trials for sure. But, it is difficult to imagine how any criminal defendant could ever be constitutionally prosecuted if mere knowledge of arguably exculpatory evidence alone were sufficient to dissipate probable cause. Clearly, police and prosecutors cannot be hamstrung in this manner if the wheels of justice are to turn at all. Criminal defendants are amply protected by their ability at their criminal trials to cross-examine prosecution witnesses who make inconsistent statements or to offer exculpatory proof on their own behalf, and, like Parisi, they may even win acquittal.

Most importantly, although "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause," Lowth, 82 F.3d at 571, the fact that at Parisi's criminal trial his counsel was able to exploit inconsistencies in the record, impeach the police who testified, and secure a verdict of "not guilty" does not mean that a properly instructed reasonable juror could infer that the county defendants failed to

---

[9] The surveillance tape, pointedly, did not show whether Russo was in fear of reprisal or the number and details of the oral sex acts with Parisi.

[10] Parisi's litany of inconsistencies laid at the feet of investigative failures by the police went on to include claims by Russo that one of her phones was unplugged, that Parisi had taken a phone bill from her apartment, and that Parisi had picked up her gym bag. (Pl.'s Opp. Br. at 7.) Again, while alleged inconsistencies may have helped to disprove the People's case against him, none affects the conclusion that no reasonable juror could find that the prosecution, at some point after an arrest supported by probable cause, had been rendered groundless.

make a further inquiry that a reasonable person would have made. It is abundantly clear that "the police are not obligated to pursue every lead that may yield evidence beneficial to the accused," Gisondi, 72 N.Y.2d at 285, 532 N.Y.S.2d at 237, 528 N.E.2d at 160; see Zahrey, 2009 U.S. Dist. LEXIS 8177, at *75 ("[I]t is not the duty of the police or prosecutors . . . to uncover exculpatory facts for the defendant."). Nor is a claim in tort or under § 1983 stated for failing to do so.

Here, Parisi faults the county defendants for failing to immediately send out police officers to "locate witnesses by knocking on neighbors' doors, despite . . . Ms. Russo's assertion that she screamed very loudly." (Pl.'s Opp. Br. at 5-6.) Further, he argues, speaking to the gas station attendants, Russo's son, or the two unidentified "witnesses" whom Russo and Parisi passed by in the apartment complex would have revealed a consensual relationship. (Id. at 6, 9.) But, Parisi's assertion that the content of the statements so obtained would have been exculpatory is wholly speculative. Parisi also lists "deficiencies" in investigating the crime scene, including failing: (1) to conduct a DNA analysis of the towel that Parisi allegedly used post-intercourse; (2) to examine a piece of Russo's carpet; (3) to dust the refrigerator door for fingerprints; and (4) to illuminate the area outside the apartment. (Id. at 6-7.) Plaintiff does not explain how these activities could possibly have provided exculpatory evidence. Quite the opposite, Parisi has conceded that he had sexual relations with Russo in her apartment. Since Parisi initially denied any contact with Russo, DNA and other testing (given his concession) would, if anything, have only bolstered Russo's story. Parisi points to no evidence either alone or in combination that would have mandated a directed verdict of acquittal, much less establish the continuing prosecution to be groundless. Summary judgment is warranted.

5. Conspiracy

The county defendants also move for summary judgment on Parisi's conspiracy counts, which allege that they agreed to arrest and prosecute Parisi without properly investigating

21

Russo's claims or considering whether probable cause existed. This claim also provides an alternate basis of support for Parisi's false arrest and malicious prosecution claims -- all of the otherwise indisputable facts that would support a probable cause or qualified immunity finding are sham concoctions deliberately manufactured from the start to frame an innocent Parisi.

### a) § 1983 Conspiracy

The elements of a § 1983 conspiracy claim are: "(1) an agreement between two or more state actors or a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Golding, 499 F. Supp. 2d at 570 (quoting Bussey v. Phillips, 419 F. Supp. 2d 569, 586 (S.D.N.Y. 2006)). As with other § 1983 actions, to succeed on his conspiracy claim, Parisi must prove not only a conspiracy, but a deprivation of a constitutional right. Id.; see also Singer, 63 F.3d at 119.

Ordinarily, a finding that probable cause for an arrest and prosecution did exist would be fatal to a claim of conspiracy to effect arrest and prosecute the claimant in violation of the Constitution, as any injury would be absent. See Celestin v. City of New York, 581 F. Supp. 2d 420, 434-35 (E.D.N.Y. 2008) ("Because there was probable cause to arrest and prosecute the plaintiff, there has been no deprivation of a Constitutional right and no valid claim of conspiracy"); Johnson v. Constantellis, 2005 WL 2291195, at *14 (S.D.N.Y. Aug. 10, 2005), aff'd, 221 Fed. Appx. 48 (2d Cir. 2007). Here, however, plaintiff claims that the factual underpinnings of the county defendants' defense of probable cause are a sham, the handiwork of the conspiracy itself. While such a theory is plausible, plaintiff has not adduced sufficient admissible evidence to create even a triable issue as to the existence of a conspiracy involving, as he alleges, Russo, Mannino, Power, Cozine and/or others. Certainly, the Court recognizes that there would likely be a dearth of evidence to establish a wide-ranging conspiracy among police officers and private citizens if it did exist, but Parisi has been unable to provide anything other

than sheer speculation and wholly conclusory allegations, which cannot withstand the county defendants' motion for summary judgment. See Blount v. Swiderski, 2006 WL 3314635, at *18 (E.D.N.Y. Nov. 14, 2006) ("This is not to say, however, that a plaintiff may overcome a summary judgment motion based simply on general and conclusory allegations"); cf. Kramer v. City of New York, 2004 WL 2429811, at *7 (S.D.N.Y. Nov. 1, 2004) ("While Section 1983 claims . . . may have to be proven by circumstantial, rather than direct, evidence, [c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (internal quotation marks omitted).

At best, Parisi's allegations support an inference that some of the county defendants had *motives* to frame him. But motives alone are insufficient to establish "overt acts" or "agreements" which a plaintiff must demonstrate. Contrary to Parisi's suggestion, a reasonable juror could not conclude that Power, Cozine, and Russo entered a conspiracy merely because they had an opportunity to talk in private on the night of the incident, or because Power was aware that the case involved Cozine's sister.[11] (Pl.'s Opp. Br. at 20-21.) Neither can

---

[11] In his opposition brief, plaintiff cites to a purported conflict in testimony between Power and Cozine regarding whether they discussed the incident while waiting for Russo's SANE examination, arguing that this inconsistency supports an inference of conspiracy. However, upon review of the record, the Court finds that plaintiff's presentation of the "inconsistency" is overstated, and that the testimony proffered by plaintiff cannot support the inference of conspiracy even when viewed in the light most favorable to Parisi. At his deposition, Power conceded that he spoke with Cozine for two hours at the SANE center, stating that the conversation "wasn't anything to do with the crime. Just a few words. I was trying to do my notes and other stuff, so, you know, he wasn't very talkative." (See Power Dep. at 24.) Cozine's testified as follows:

Q: Did you and [Power] talk at all during this time?
A: I'm sure we did, but I don't recall what we actually spoke about.

        *          *          *

Q: So you don't have any specific recollection of a conversation. Do you think it's possible you and Detective Power talked about what was going on that night?
A: Yes
Q: Do you recall any specific details that you may have discussed with Detective Power about Mr. Parisi?

23

plaintiff present any evidence that would permit a reasonable juror to conclude that Cozine had any measurable influence over the course of the investigation. (Id. at 22.) With nothing more than the naked assertion of its existence, there is no triable issue that any defendant participated in a conspiracy to violate Parisi's constitutional rights. See Adler v. Pataki, 204 F. Supp. 2d 384, 396 (N.D.N.Y. 2002) (explaining that "innuendo, unrelated incidents and conclusory allegations, without any factual basis" are insufficient to support a conspiracy claim). The county defendants are entitled to judgment on this score as well.

b) *§ 1985 Conspiracy*

Although neither party addresses it in their briefs, Parisi's complaint also alleges a violation of 42 U.S.C. § 1985(3), which would require proof that: (1) a conspiracy existed; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons equal protection or equal privileges and immunities under the laws; and a showing that (3) an act in furtherance of the conspiracy occurred; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States. See United Bhd. of Carpenters & Joiners, Local 610 v. Scott, 463 U.S. 825 (1983). As with the § 1983 claim, plaintiff is unable to demonstrate the existence of any conspiracy, much less any acts in furtherance of it. Therefore, Parisi's § 1985(3) claim fails as a matter of law. Moreover, a § 1985(3) claim requires demonstration of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). The record on this point is absolutely barren of any such evidence. Judgment is for

---

A: Just that they had, they had some sort, they had a prior case involving him, which is how they, which is how he became a suspect after talking to my sister.

Q: So Detective Power told you about a prior incident with Mr. Parisi when you were at Good Sam [Hospital], is that what you're saying?

A: Sometime afterwards, I don't know if it was exactly there, but at some point.

(See Cozine Dep. at 34-36.)

the county defendants on Parisi's § 1985(3) claim for this reason as well.[12]

## 6. Suffolk County

Although the dismissal of Parisi's claims against the individual defendants is not necessarily a *per se* bar to his § 1983 claims against Suffolk County, see Barrett v. Orange County Human Rights Comm'n, 194 F.3d 341, 350 (2d Cir. 1999) ("municipal liability for constitutional injuries may be found to exist even in the absence of individual liability, at least so long as the injuries complained of are not solely attributable to the actions of named individual defendants"), Parisi remains unable to establish any Fourth Amendment injury on which to base his § 1983 claims against the county. Moreover, assuming *arguendo* that individual police officers violated Parisi's constitutional rights, Suffolk County would still not be liable solely on that basis because a municipality may not be held liable for its employees' constitutional violations under a general *respondeat superior* theory. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. Therefore, to hold a local government "liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)

Parisi's claims against Suffolk County are doomed by his failure to produce proof of any sort to support his conclusory allegations that the county failed to train its employees and permitted them to falsely arrest and maliciously prosecute him. Parisi has produced no evidence

---

[12] Obviously, the finding that there is no triable issue as to the existence of a police-invented conspiracy to frame Parisi also defeats Parisi's alternate theory supporting his false arrest and malicious prosecution claims -- no frame up, no sham evidence, just real evidence supporting probable cause that, ultimately, did not convince a jury of Parisi's guilt beyond a reasonable doubt.

of any unconstitutional policy or custom, nor does he present any proof that would link any Suffolk County policy or custom to any individual county defendant's decision to arrest or prosecute him. See Monell, 436 U.S. at 694 (policy or custom must be "the moving force [behind] the constitutional violation"). Empty claims are simply not enough to defeat a properly supported summary judgment motion. See Shapiro v. Kronfeld, No. 00-cv-6286, 2004 U.S. Dist. LEXIS 23807, at *22 (S.D.N.Y. Nov. 24, 2004) (unsupported allegations regarding city administrative policy are insufficient to establish municipal liability). The Monell claim against Suffolk County is also dismissed.

7.  Russo and Mannino

Plaintiff's complaint states causes of action against the complaining witness, Brenda Russo, and the 9-1-1 caller, Kim Mannino, asserting that each "allow[ed] State officials to use them in bringing false and libel charges against Plaintiff." Construing Parisi's pro se complaint liberally, as the Court must, see Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (noting that pro se litigants' submissions "must be read to raise the strongest arguments that they suggest"), the Court construes his complaint to allege a § 1983 claim that Russo and Mannino conspired against him with Suffolk police officers. See Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) ("To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act.") (quoting Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992)). However, as the Court has already determined that there are no material facts in dispute that viewed in Parisi's favor would support a finding that such a conspiracy involving state actors existed, it dismisses Parisi's federal claims against these two non-state actors as well.

Furthermore, to the extent that Parisi's complaint could be construed to

incorporate pendent state causes of action against Russo and Mannino not involving the county defendants, the Court declines to exercise supplemental jurisdiction over any such claims against these non-state actors, neither of whom have been served process. In 2004, plaintiff failed to serve his complaint on either Russo or Mannino because he could not discover their addresses (see Docket Entries Nos. 7, 8, 10, 13-17), and, despite several years interim, the record reflects no further attempts by plaintiff or his subsequently appointed counsel to pursue such claims against either of these defendants in this action. Any potential state claims against Russo and Mannino arising out of the underlying conduct are, therefore, dismissed without prejudice.

## Conclusion

For all of the foregoing reasons, the joint motion of Suffolk County and its Police Department, Detective Power, and Officer Cozine for summary judgment is granted in its entirety, and the action against them is dismissed. Upon searching the record, all federal claims against defendants Mannino and Russo are also dismissed with prejudice. Any potential state claims against defendants Mannino and Russo are dismissed without prejudice.

With all claims against Assistant District Attorney Walsh and the Suffolk County District Attorney's Office having been withdrawn previously by plaintiff and dismissed with prejudice, the Clerk of the Court is hereby directed to enter Judgment consistent with this Memorandum and Order and to close this case.


SO ORDERED.

Dated: Brooklyn, New York
       November 30, 2009


                                        _____
                                        ERIC N. VITALIANO
                                        United States District Judge

27